IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GEORGE DYNOTT, | : | CIVIL ACTION NO. |
| | : | 1:13-CV-1474-WSD-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONSTAR   MORTGAGE,   LLC, | : | |
| and MCCALLA RAYMER, LLC, | : | **F I N A L     R E P O R T     A N D** |
| | : | **RECOMMENDATION   ON   A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiff George Dynott, proceeding *pro se*, initiated this action by filing the
Complaint in the Superior Court of Cobb County on April 1, 2013. On May 1, 2013,
Defendant Nationstar Mortgage LLC ("Nationstar") removed the action to this Court
with the consent of Defendant McCalla Raymer, LLC ("McCalla Raymer").
*See* Notice of Removal [1], Ex. B. Plaintiff is a homeowner who claims that the
Defendants have improperly foreclosed, or attempted to foreclose, on his property.

The action is now before the Court on the Motion to Dismiss [3] filed by
Defendant Nationstar and the Motion to Dismiss [9] filed by Defendant McCalla
Raymer. For the reasons discussed below, the undersigned **RECOMMENDS** that the
Defendants' Motions to Dismiss [3][9] be **GRANTED IN PART, DENIED IN
PART**. In sum, the Court concludes that, as a matter of law, Plaintiff has failed to
assert a plausible claim for relief under the federal statutes cited in the Complaint. For

that reason, the undersigned **RECOMMENDS** that the Motions to Dismiss be **GRANTED** as to Plaintiff's federal claims and that those claims be dismissed. The Court further concludes that the Court should decline to exercise supplemental jurisdiction over the Plaintiff's remaining state law claims. For that reason, the undersigned **RECOMMENDS** that the Motions to Dismiss be **DENIED** as to the state law claims and that those claims be remanded to the Superior Court of Cobb County, the forum where Plaintiff originally filed the Complaint.

## I.     BACKGROUND

On April 1, 2013, Plaintiff George Dynott filed a "Verified Complaint for FHA Contract Torts, Wrongful Foreclosure Torts RESPA and FDCPA Debt Collection Torts" ("Complaint") in the Superior Court of Cobb County. *See* Complaint [1-1], attached to Notice of Removal [1]. The allegations set forth below are taken from the Plaintiff's Complaint.

Plaintiff alleges that he entered into an FHA loan agreement with Home Banc Mortgage Corporation ("Home Banc") on August 31, 1999. Compl. [1-1] at 3. Although Plaintiff does not identify the property that was the subject of that FHA loan agreement, he states that he has lived on his "estate" located at 2911 Water Lily Court, Austell, GA 30306 (the "Property"), at all relevant times. *Id.* After Home Banc became insolvent on or about August 21, 2007, EMC Mortgage Corporation was

awarded certain servicing rights under an Asset Purchase Agreement. *Id.* Notwithstanding the Asset Purchase Agreement, Metlife Home Loans began servicing Plaintiff's loan on an unspecified date.[1] *Id.* Plaintiff contends that he then received foreclosure notices from McCalla Raymer dated February 22, 2013. *Id.*

Plaintiff alleges that Nationstar "recently acquired certain mortgage servicing rights (MRS) from MetLife Bank, N.A. The Servicing rights did not include ownership of the mortgages held by Metlife Bank. The MRS were publically announced to convey over to Nationstar MetLife's Reverse Mortgage servicing rights." *Id.* at 3. Plaintiff also alleges that McCalla Raymer is a "premiere default services specialty law firm servicing vast numbers of mortgage lenders, loan servicers, trusts and financial institutions. It is presumed that MCCALLA's [sic] is well acquainted with the FHA guaranteed loans and the requisite servicing conditions.

---

[1] Before filing this action, Plaintiff filed an action in the Superior Court of Fulton County against Metlife Group, Inc., and McCalla Raymer, that was also removed to this Court. *See George Dynott v. Metlife Group, Inc., d/b/a Metlife Home Loans, and Law Firm McCalla Raymer, LLC*, Civil Action No. 1:11-CV-1592-WSD, NDGa (filed May 16, 2011) ("*Dynott I*"). Judge Duffey remanded that action to the Superior Court of Fulton County on the ground that Plaintiff had failed to assert any claim under federal law. *See Dynott I*, Opinion and Order dated June 13, 2011. In the Complaint filed in this case, Plaintiff states that the case against Metlife Group, Inc., and McCalla Raymer in the Superior Court of Fulton County was dismissed in 2012. *See* Compl. [1-1] at 3; *see also* McCalla Raymer's Motion to Dismiss [9], Ex. B (Order dated October 4, 2011 in which Judge Wendy Shoob of the Superior Court of Fulton County dismissed *Dynott I* on the ground that the Complaint failed to state a claim upon which relief may be granted).

3

MCCALLA is presumed to have full knowledge of their actions including the implied limitations under the FHA loan." *Id.* at 2 (emphasis in original).

In the Complaint, Plaintiff asserts claims arising under both federal and state law. In the eight counts listed under "Damage Claims," Plaintiff asserts two claims that arise under specific federal statutes. *Id.* at 15. Plaintiff asserts a claim "for damages under FDCPA statute violation for actual damages of $1,000.00 per defendant, compensatory and punitive. MCCALLA failed to provide a clear and concise information with respect to the validation of the debt when called upon." *Id.* (emphasis in original). Plaintiff further asserts "claims for damages under RESPA statute violation for actual damages of $1000.00 for failure to provide, compensatory and punitive. Nationstar failed to provide a bona fide servicing notice with no evidence of an agreement to service Mr. Dynott's loan." *Id.*

Plaintiff also asserts other claims that arise under Georgia law. He asserts "claims for damages by the breach of  duty and breach of negligence per se due to legal duties under the FHA Contract." *Id.* Plaintiff asserts "claims for damages under Georgia Statutes for attempted Wrongful foreclosure by both Defendants." *Id.* He further asserts a claim for "libel damages and restoration of his name" because he has been "publically humiliated by the legal notices in the Cobb County newspaper." *Id.* He also seeks to set aside any foreclosure sale, and "appropriate damages to unwind

such sale." *Id.* Finally, Plaintiff seeks punitive and compensatory damages based on the alleged negligence of Defendants under O.C.G.A. §§ 44-14-160 through 162.4., and other damages "deemed appropriate by the court at trial." *Id.*

## II.   DISCUSSION

### A.   *Standard on a Motion to Dismiss*

Defendants Nationstar and McCalla Raymer have filed Motions to Dismiss, arguing that all the claims asserted against them in the Complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Although Plaintiff requested an extension of time in which to file a response to those motions, and that request was granted, the Plaintiff failed to file a response to either motion. *See* Order [15] dated October 18, 2013. Under the Local Rules, the Motions to Dismiss are thus deemed unopposed. *See* LR 7.1B, NDGa (failure to file a response to a motion "shall indicate that there is no opposition to the motion"). In consideration of Plaintiff's *pro se* status, however, the undersigned has considered the merits of the Defendants' Motions to Dismiss despite his failure to file any response to them.

When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

Although the Supreme Court requires a plaintiff to allege sufficient facts to state a plausible claim for relief, because Plaintiff is proceeding *pro se* in this case, the Complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*; *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice"). Even though a *pro se* complaint is held to less stringent standards than formal pleadings drafted by attorneys, "the Court need not accept as true legal conclusions or unwarranted factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006). Nothing in the leniency accorded a *pro se* filing excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. *See Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11th Cir. 2002).

As noted above, a court ordinarily cannot consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6), but when a plaintiff has referred to documents in the complaint and such documents are central to the plaintiff's claims, a court may consider those documents as part of the pleadings in the case and may consider them in resolving a Motion to Dismiss. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal").

7

Moreover, the Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits control. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

> Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.

*Id.*; *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." (citation omitted)); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

In this case, Plaintiff has referred to various documents in the Complaint, including the Security Deed executed on August 31, 1999, and letters he received from McCalla Raymer on behalf of Nationstar regarding the loan, and he has attached those documents to the Complaint. *See* Compl., Ex. A, A2, B, C, 100, 200, D, E.

Because Plaintiff attached those documents to the Complaint, they are considered part of the Complaint for all purposes. FED. R. CIV. P. 10(c).

In addition, Defendant McCalla Raymer has also submitted exhibits in connection with its Motion to Dismiss, including the Security Deed executed by Plaintiff on August 31, 1999, along with riders to that Security Deed. When a court is considering a motion to dismiss under Rule 12(b)(6), documents attached to the motion to dismiss may be considered if the document is both central to the plaintiff's claim and undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*."). "'Undisputed' means that the authenticity of the document is not challenged." *Day*, 400 F.3d at 1276. Because the documents submitted by McCalla Raymer appear to be central to the Plaintiff's claims, and because he has not challenged the authenticity of the documents, they may be considered as part of the pleadings in this case in resolving the Motions to Dismiss. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

B.     *Plaintiff's Claims*

Construing the Plaintiff's Complaint liberally, in consideration of his *pro se* status, the undersigned finds that Plaintiff has brought a claim against both Defendants under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2600 *et seq.* Plaintiff has also asserted claims arising under state law, including attempted wrongful foreclosure. Defendants argue that all of the claims asserted in the Complaint must be dismissed on the ground that Plaintiff's Complaint is an impermissible shotgun pleading.

1.     *Shotgun Complaint*

Defendants argue that Plaintiff's entire Complaint must be dismissed on the ground that it is a shotgun pleading. A shotgun pleading is defined by "the failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading." *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x. 368, 371 (11th Cir. 2005) (unpublished). Shotgun pleadings typically "contain several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). As a result, "it is virtually impossible to know

which allegations of fact are intended to support which claim(s) for relief" when a plaintiff presents a shotgun pleading. *Anderson v. District Bd. of Trs. of Central Fla. Community Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

Shotgun pleadings also characteristically fail to specify which defendant is responsible for each act alleged. *Beckwith*, 146 F. App'x at 372 ("It is virtually impossible to ascertain what factual allegations correspond with each claim and which claim is directed at which defendant."). The Eleventh Circuit has "roundly, repeatedly, and consistently condemn[ed]" shotgun pleadings, because such pleadings "wreak havoc on the judicial system." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008); *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001).

In this case, the Court agrees with the Defendants that Plaintiff has filed a shotgun pleading with respect to his federal claims under the FDCPA and RESPA. For example, Plaintiff's Complaint contains a section titled "Noncompliance with HUD Regulations is an Affirmative Defense for Mortgagors in a Foreclosure Action." Compl. at 9. In that section, Plaintiff states that he "gives the court judicial notice of cases that have already determined the veracity of defenses available to mortgagors when the mortgage contract operates under FHA regulations." *Id.* He goes on to discuss a case purportedly from the Indiana Court of Appeals, but he fails to explain how that case is relevant to the actions of the Defendants in this case. *Id.*

Thus, Plaintiff's Complaint fails to set forth with sufficient clarity the factual allegations in support of each of the asserted claims. Specifically, Plaintiff has also failed to state what actions were taken by each Defendant that were allegedly in violation of the statutes cited in the Complaint. As an example, the Plaintiff asserts a claim under the FDCPA in "Count 4" of the Complaint, but he does not explain what specific actions were taken by either Defendant that he contends violated that statute. Compl. at 15. Nevertheless, he seeks "damages under FDCPA statute violation for actual damages of $1,000.00 per defendant, compensatory and punitive." *Id.* His only factual allegation in support of that claim is that "MCCALLA failed to provide a clear and concise information with respect to the validation of the debt when called upon." *Id.* (emphasis in original). But Plaintiff does not state in the Complaint when McCalla Raymer was "called upon" to validate the debt.[2]

Furthermore, even if Plaintiff's Complaint were not a shotgun pleading, the Court finds that he has failed to state a claim for relief under the FDCPA or RESPA. Although the Plaintiff's specific factual allegations are difficult to discern, the Court has interpreted his Complaint liberally and will now examine his claims brought under the FDCPA and RESPA against both Defendants.

---

[2] *See* the discussion of the Plaintiff's FDCPA Claim against McCalla Raymer, *infra*.

### 2.   *Plaintiff's FDCPA Claims*

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Specifically, it "prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures." *Acosta v. Campbell*, 309 Fed. App'x 315, 319 (11th Cir. 2009) (*citing* 15 U.S.C. §§ 1692d, 1692e, 1692f).

In order to state a claim under the FDCPA, a plaintiff must allege sufficient facts to assert a plausible claim that a defendant is a debt collector as that term is defined in the statute and that it engaged in some act prohibited by the FDCPA, or failed to disclose information required by the FDCPA, in attempting to collect from Plaintiff on a consumer debt. *See Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000). It is well-established that the FDCPA applies only to "debt collectors" and not to creditors or mortgage servicers. *See* 15 U.S.C. § 1692a(6); *see also Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl-22DAB, 2012

WL 1176701, at *11 (M.D. Fla. April 9, 2012) (the "critical element is whether the defendant is a debt collector" as defined under the statute).

> The FDCPA defines a "debt collector" as
>
> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third party is collecting or attempting to collect such debts. For the purpose of section 1692f(6) . . . , such term also includes any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692(a)(6).

The statute also excludes from the definition of "debt collector" altogether any person who acquires a debt before it is in default. *See* 15 U.S.C. § 1692a(6)(F). This exclusion "has been interpreted by courts to mean that mortgage servicers are not covered by the FDCPA if they began servicing the loan at a time when it was not in default." *Stroman v. Bank of America Corp.*, 852 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012). A plaintiff's ability to properly classify a defendant as a debt collector is critical because the "FDCPA applies only to 'debt collectors' whose conduct involves the collection a debt." *Evans v. Appalachian Mountain Serv., Inc.,* No. CV611-037, 2011 WL 3739552, at *2 (S.D. Ga. Aug. 24, 2011) (internal citation omitted).

a.     FDCPA Claim against Nationstar

In "Count 4" of the Complaint, Plaintiff asserts a claim "for damages under FDCPA statute violation for actual damages of $1,000.00 per defendant, compensatory and punitive. MCCALLA failed to provide a clear and concise information with respect to the validation of the debt when called upon." Compl. [1-1] at 15 (emphasis in original). Plaintiff appears to be asserting this claim solely against McCalla Raymer, but he expressly requests damages of $1,000 "per defendant." Furthermore, in the portion of the Complaint in which Plaintiff complains of "Confusion Made in Intent to Foreclose under Georgia Foreclosure Law and Under FDCPA: Failure to Communicate with 'Real' Secured Creditor and Loan Servicer under Applicable Laws," Plaintiff states as follows: "Upon information and belief, Plaintiff points to the preponderance of evidence that shows where Nationstar and MCCALLA are engaged in some kind of debt collection artifice." *Id.* at 5-6. Thus, although the Complaint is not entirely clear, the Court will interpret the Plaintiff's FDCPA claim liberally and assume that he intended to assert FDCPA claims against both Nationstar and McCalla Raymer.

The undersigned finds, however, that Plaintiff has failed to state a plausible claim under the FDCPA against Nationstar because Plaintiff has failed to allege sufficient facts to demonstrate that Nationstar qualifies as a "debt collector" under the

FDCPA. Plaintiff does not allege facts suggesting that Nationstar engages in a business in which the "principal purpose" is the collection of debts, and he does not allege facts indicating that Nationstar took any action to collect a debt owed to another entity.

Instead, Plaintiff's allegations suggest that Nationstar was the servicer of his mortgage, or at least represented itself as the servicer. Plaintiff states that he "believes that Nationstar was overly aggressive in its debt collection actions and factual was not is [sic] legal loan servicer." *Id.* at 6. While Plaintiff makes the conclusory allegation that Nationstar took "debt collection actions," he fails to explain what these "debt collection actions" were. Moreover, even if Nationstar had engaged in "debt collection actions," in order to be held liable for those actions under the FDCPA, it must be considered a "debt collector," as defined by the statute. As discussed above, it is not enough for a plaintiff to allege only that a bank engaged in debt collection activities; the FDCPA applies only to debt collectors and does not apply to a bank that takes actions to recover its own debts as a mortgage lender or servicer. Finally, the letters that Plaintiff attached to his Complaint as exhibits demonstrate that the letters Plaintiff received regarding his mortgage loan came from McCalla Raymer and not Nationstar. *See* Compl., Ex. A, A2, B.

The undersigned thus finds that Plaintiff has failed to state a plausible claim under the FDCPA against Nationstar because he has failed to allege sufficient facts indicating that Nationstar would be considered a "debt collector" under the FDCPA. Accordingly, the undersigned **RECOMMENDS** that Nationstar's Motion to Dismiss [3] be **GRANTED** with respect to the Plaintiff's FDCPA claim against Nationstar in "Count 4" of the Complaint.

b.      FDCPA Claim against McCalla Raymer

Although Plaintiff fails to allege sufficient facts to state a plausible claim that Nationstar was acting as a "debt collector" under the FDCPA, the undersigned finds that, in consideration of the factual allegations of the Complaint along with the documents attached to it, including correspondence to the Plaintiff from McCalla Raymer, the Plaintiff has alleged sufficient facts to state a plausible claim that McCalla Raymer was acting as a debt collector under the FDCPA. The facts as alleged by Plaintiff indicate that McCalla Raymer was acting as agent on behalf of Nationstar, and McCalla Raymer was not acting to collect a debt that it owned or serviced before the loan went into an alleged default. In particular, Plaintiff has attached a copy of a letter to him from McCalla Raymer dated February 22, 2013 that states: "**EXCEPT AS MAY BE NOTED HEREIN, THIS IS AN ATTEMPT TO COLLECT A**

**DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**" Compl., Ex. A (emphasis in original).

Accordingly, the undersigned finds that Plaintiff has alleged sufficient facts to state a plausible claim that McCalla Raymer was acting as a debt collector under the FDCPA for the purposes of Plaintiff's claims. The Court finds, however, that Plaintiff has failed to state a claim for relief under the FDCPA against McCalla Raymer because he has failed to allege sufficient facts to establish a plausible claim that it engaged in debt collection activity that violated the statute.

Plaintiff alleges that McCalla Raymer violated the FDCPA when it "failed to provide a clear and concise information with respect to the validation of the debt when called upon." Compl. at 15. Thus, Plaintiff appears to be asserting a claim for a violation of 15 U.S.C. § 1692g, which provides in relevant part:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–
>
> > (1) the amount of the debt;
> >
> > (2) the name of the creditor to whom the debt is owed;
> >
> > (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g.

Plaintiff alleges that McCalla Raymer violated this section of the FDCPA by failing to respond to his request to validate the debt. Plaintiff states in the Complaint that, on or about March 21, 2013, he sent "legal notices under RESPA complaint

resolution and FDCPA debt validation." Compl. at 11. Plaintiff, however, does not state the entity to whom he sent these "legal notices" regarding debt validation. Plaintiff attaches a copy of a letter to his Complaint that he claims is a "Debt Validation Request" sent pursuant to 15 USC 1692(g), but the letter states on its face that it was addressed to "NationStar Mortgage, LLC." *See* Compl., Ex. D.[3] Plaintiff has not alleged, nor has he provided any documents attached to the Complaint, that indicate that he addressed any letter to McCalla Raymer requesting that it validate the debt, as required by the FDCPA.

In any event, even if the Plaintiff had alleged sufficient facts in the Complaint to establish that he sent a "Debt Validation Request" to McCalla Raymer within the 30-day time period required under the FDCPA, he has failed to allege that McCalla Raymer violated the FDCPA by continuing debt collection activities after he sent the request for validation. As set forth above, the FDCPA provides that, in the event that a consumer sends a timely notice to the debt collector that the debt is disputed, "the

---

[3] Although the letter the Plaintiff sent to Nationstar is accompanied by a "Certificate of Service" indicating that McCalla Raymer was also served with a copy of the letter, the "Certificate of Service" is not signed. *See id.* In any event, the Plaintiff never alleges that he sent any letter to McCalla Raymer requesting that it validate the debt that it was allegedly attempting to collect on behalf of Nationstar. Merely sending McCalla Raymer a copy of a request specifically and exclusively addressed to Nationstar does not trigger any obligations by McCalla Raymer under the FDCPA.

debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." Plaintiff does not allege that McCalla Raymer continued any "debt collection activities" after receiving the alleged debt verification request.

Plaintiff also alleges in the Complaint that McCalla Raymer violated the FDCPA by sending him letters that were "intentionally confusing and deceptive as defined under the FDCPA statute." Compl. at 10. Plaintiff contends that McCalla Raymer violated the FDCPA because it "failed to provide the complete information about the Secured Creditor which includes their address, telephone number." *Id.*

This portion of Plaintiff's FDCPA claim appears to be brought under 15 U.S.C. § 1692e, which provides in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.
>
> (2) The false representation of–
>
> (A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to–

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained

will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

15 U.S.C. § 1692e.

Courts "use a 'least-sophisticated consumer' standard to consider whether a debt collector's communications violate § 1692e, presuming that the 'least-sophisticated consumer' possesses a rudimentary amount of information about the world and a willingness to read a collector's notice with some care." *Hepsen v. Resurgent Capital Srvcs., LP*, 383 F. App'x 877, 881 (11th Cir. 2010). This approach "protects debt collectors against liability for unreasonable misinterpretations of collection notices." *Colmon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). The standard is "whether a hypothetical least sophisticated consumer would be deceived

or misled by the debt collector's practices." *Ferguson v. Credit Mgmt. Control, Inc.*, 140 F. Supp. 2d 1293, 1298 (M.D. Fla. 2001).

Although Plaintiff alleges in the Complaint that McCalla Raymer sent letters to him that were "intentionally confusing and deceptive," he does not explain how the letters were either confusing or deceptive, except to complain that McCalla Raymer did not include the address and telephone number of the secured creditor. Compl. at 10. Plaintiff, however, has not cited to any section of the FDCPA that requires a debt collector to provide such detailed information about the secured creditor. Plaintiff has not identified any other "false, deceptive, or misleading" representation made by McCalla Raymer that allegedly violated 15 U.S.C. § 1692e.

Accordingly, the undersigned **RECOMMENDS** that McCalla Raymer's Motion to Dismiss [9] be **GRANTED** with respect to the Plaintiff's FDCPA claim against it in "Count 4" of the Complaint.

3.    *Plaintiff's RESPA Claim*

In "Count 5" of the Complaint, Plaintiff asserts "claims for damages under RESPA statute violation for actual damages of $1000.00 for failure to provide, compensatory and punitive. Nationstar failed to provide a bona fide servicing notice with no evidence of an agreement to service Mr. Dynott's loan." Compl. at 15. Plaintiff further alleges that:

> RESPA Servicing Transfer notifications have not been given under 12
> USC 2601 et seq. and under 24 CFR 3500 et seq. Neither Metlife has
> communicated, as the transferor, nor has NationStar, as the transferee,
> communicated to Mr. Dynott in their writings when and where the
> servicing should begin, as required under 12 USC 2601 et seq. The
> Statute requires a 30 day notice of servicing transfer by either the
> transferor or transferee or both. Noticeably, no notice is a deficient
> conduct under the applicable RESPA law. Plaintiff seeks requisite
> damages under the RESPA statute for servicing without requisite notice
> as a legal duty.

Compl. at 8.

Congress enacted RESPA in an effort to provide consumers with more

information on the nature and costs of real estate transactions, and to prevent

consumers from falling prey to abuses and unnecessarily high costs. *See McCarley v.*

*KPMG Intern.*, 293 Fed. Appx. 719, 722 (11th Cir. 2008). RESPA provides that those

making and/or servicing a mortgage loan must make certain disclosures relating to the

servicing of the loan. 12 U.S.C. §§ 2605(a), (b). The lender must disclose, at the time

of application, whether the servicing of the loan may be assigned, sold, or transferred

to any other person at any time while the loan is outstanding. 12 U.S.C. § 2605(a).

Further, the loan servicer must generally notify the borrower of any assignment, sale

or transfer of the servicing of the loan within 15 days before the effective date. *Id.* at

§ 2605(b). RESPA does not require notice when the underlying note or mortgage is

transferred.

In addition to these automatic disclosures, RESPA requires that a loan servicer respond to a Qualified Written Request ("QWR") from a borrower that meets certain requirements and that seeks "information relating to the servicing of such loan." 12 U.S.C. § 2605(e); *see also* 24 C.F.R. § 3500.21(e). Moreover, RESPA creates a private right of action for only three types of wrongful acts: (1) payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a), (b); (2) requiring a buyer to use a title insurer selected by the seller, 12 U.S.C. § 2608(b); and (3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a QWR for information about a loan, 12 U.S.C. § 2605(f). Claims brought under §§ 2607 or 2608 are subject to a one-year statute of limitation, while claims under § 2605 are governed by a three-year statute of limitations, which begins running when the violation occurs. 12 U.S.C. § 2614.

### a.   RESPA Claim against McCalla Raymer

The undersigned finds that Plaintiff has failed to allege sufficient facts to assert a plausible claim that Defendant McCalla Raymer qualified as a loan servicer under RESPA. Instead, it appears that Plaintiff has asserted his RESPA claim solely against Nationstar, as the purported servicer of his mortgage. *See* Compl. at 15 ("Nationstar failed to provide a bona fide servicing notice with no evidence of an agreement to service Mr. Dynott's loan."). Moreover, Plaintiff has also failed to allege any facts in

the Complaint indicating that McCalla Raymer violated RESPA in any way. Accordingly, the undersigned **RECOMMENDS** that McCalla Raymer's Motion to Dismiss [9] be **GRANTED** with respect to the Plaintiff's RESPA claim against it in "Count 5" of the Complaint.

b.     RESPA Claim against Nationstar

With respect to Nationstar, Plaintiff does allege sufficient facts to allege that it was a loan servicer under RESPA, and, interpreting the Plaintiff's Complaint liberally, it appears that he is claiming that it failed to notify him of the transfer of the servicing of his mortgage when it received the servicing rights from Metlife. Compl. at 8, 15. RESPA requires that a loan servicer notify the borrower when it has been transferred the servicing rights on the borrower's federally related mortgage loan. 12 U.S.C. § 2605.

(c) Notice by transferee of loan servicing at time of transfer

(1) Notice requirement

Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer.

(2) Time of notice

(A) In general

Except as provided in subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not more than 15 days after the effective date of transfer of

the servicing of the mortgage loan (with respect to which such notice is made).

(B) Exception for certain proceedings

The notice required under paragraph (1) shall be made to the borrower not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan (with respect to which such notice is made) in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by–

(i) termination of the contract for servicing the loan for cause;

(ii) commencement of proceedings for bankruptcy of the servicer; or

(iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(C) Exception for notice provided at closing

The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.

12 U.S.C. § 2605(c).

Plaintiff contends that Nationstar violated this provision of RESPA when it failed to provide him with the required notice that it was the new servicer of his mortgage loan. Compl. at 8 ("Neither Metlife has communicated, as the transferor, nor

28

has NationStar, as the transferee, communicated to Mr. Dynott in their writings when and where the servicing should begin, as required under 12 USC 2601 et seq."); Compl. at 15 ("Nationstar failed to provide a bona fide servicing notice with no evidence of an agreement to service Mr. Dynott's loan."). Although Plaintiff requests "actual damages" of $1,000 for this RESPA violation, however, he has failed to allege any facts in the Complaint that would state a plausible claim that he was damaged in any way for this alleged RESPA violation by Nationstar. *See* 12 U.S.C. § 2605(f) (a loan servicer who fails to comply with this provision shall be liable for an amount equal to the sum of "any actual damages to the borrower as a result of the failure" as well as "additional damages" when the servicer has a "pattern or practice of noncompliance" in an amount not to exceed $2,000).

Plaintiff further alleges that Nationstar failed to respond to a QWR regarding the servicing of his mortgage, as required by RESPA. *See* Compl., Ex. E. Plaintiff alleges in the Complaint that, on or about March 21, 2013, he sent "legal notices under RESPA complaint resolution and FDCPA debt validation." Compl. at 11. He has also attached a copy of the letter titled "Qualified Written Request" that he claims he sent to Nationstar on or about March 21, 2013. Compl., Ex. E.

As discussed above, RESPA requires a loan servicer to respond to a QWR from a borrower that seeks "information relating to the servicing of such loan." 12 U.S.C.

§ 2605(e); *see also* 24 C.F.R. § 3500.21(e). "RESPA does not require a servicer to respond to any question that a borrower may ask–no matter how broad, vague, or far afield." *De Vary v. Countrywide Home Loans, Inc.*, 701 F.Supp. 2d 1096, 1106 (D. Minn. 2010). Rather, as noted, servicers are required only to respond to inquiries relating to *servicing* of the loan. Congress specifically defined "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). RESPA does not require servicers to answer inquiries on other topics. *See Liggion v. Branch Banking and Trust*, Civil Action No. 1:11-cv-1133-WSD, 2011 WL 3759832 at *3 (N.D.Ga. Aug. 24, 2011) (Duffey, J.) ("Plaintiff's information document requests are not a proper qualified written request under RESPA because they do not relate to the servicing of the loan."); *see also Lawther v. Onewest Bank*, No. C10-0054RS, 2010 WL 4936797 at *6 (N.D. Cal. Nov. 30, 2010) ("A loan servicer only has a duty to respond if the information request is related to loan servicing.") (internal citations omitted); *Jones v. PNC Bank, N.A.*, No. 10-cv-01077LHK, 2010 WL 3325615 at *2 (N.D. Cal. Aug. 20, 2010) ("A QWR must seek information relating to the servicing of the loan; a request for loan origination documents is not a QWR.").

As one court explained, it is not sufficient for a plaintiff to allege that a letter sent to a servicer requested information about the loan in general; the letter must request information specifically about the servicing of the loan in order to qualify as a QWR:

> The counterclaim alleges that on April 14, 1998, the Naeems, through counsel, sent a qualified written request to MorEquity for information relating to their loan, and that MorEquity failed to respond within 60 days as required by § 2605(e). None of the irregularities alleged in the counterclaim, however, relate in any way to the "servicing" of the loan, as that term is defined in the statute. The counterclaim alleges a forged deed, and irregularities with respect to the recording of the two loans, but makes no claim with respect to improper servicing. There are no claims, for example, that MorEquity did not give the Naeems credit for any periodic payments made, which is how the statute defines servicing. According to the allegations of the counterclaim, the letter sought information about the validity of the loan and mortgage documents, but made no inquiry as to the status of the Naeem account balance. Therefore, the request did not relate to "servicing" of the loan, and Count V fails to state a claim under § 2605.

*MorEquity v. Naeem*, 118 F.Supp.2d 885, 901 (N.D. Ill. 2000).

Thus, in order to state a claim for a violation of this section of RESPA, 12 U.S.C. § 2605(e), a plaintiff must allege facts to support that: (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant failed to adequately respond within the statutory period of 20 days or 60 days, and (4) the plaintiff is entitled to actual or statutory damages. 12 U.S.C. § 2605; *see also Frazile v. EMC Mortg. Corp.*, 382 F. Appx. 833, 836 (11th Cir. 2010) (an allegation of

31

damages is a necessary element of any claim under § 2605). A loan servicer who fails to respond to a qualified written request is liable for the failure, but a borrower is limited to actual damages unless the failure to respond was part of a "pattern or practice of noncompliance" with RESPA's requirements. *See* 12 U.S.C. § 2605(f).

In this case, Plaintiff has failed to allege sufficient facts to demonstrate that the letter he purportedly sent to Nationstar on or about March 21, 2013 would qualify as a QWR under RESPA. The letter Plaintiff attached to his Complaint as the alleged QWR requests information far beyond information about the mere servicing of his individual loan. *See* Compl., Ex. E. For example, Plaintiff requests as follows:

> If you have an authorized accounting firm that certifies your accounting records which may be given to state or federal banking regulators such as the Office of Comptroller of Currency, a Department of the U.S. Treasury, or with the Banking and Finance Department, then please prepare to have all General Accepted Accounting Practices (GAAP and Financial Standards Accounting Board's (FSB) double book entry accounting report provided to me. . . . Upon information and belief, I believe that because you are a mortgage servicing company who may have recently acquired assets from a national bank [national association to the U.S. Treasury Department]. Therefore, it is believed that those records should be available to the public and that the loan level details are made available for Congressional review. If you need a Freedom of Information Act request to obtain such detailed reporting, then consider this QWR a FOIA requests [sic], too.

Compl, Ex. E, at 2.

Furthermore, just as with his claim that Nationstar violated RESPA by failing to provide the required notice under 12 U.S.C. § 2605(c), Plaintiff also fails to allege

32

any facts that would suggest that he suffered actual damages from Nationstar's alleged failure to respond to his QWR, in violation of 12 U.S.C. § 2605(e). *See Habib v. Bank of America Corp.*, Civil Action No. 1:10-cv-04079-SCJ-RGV, 2011 WL 2580971 at *4 (N.D. Ga. March 15, 2011) (Vineyard, M.J.) ("Plaintiff's allegations fail to put Bank of America on notice as to how any purported RESPA violations harmed her."), *adopted by* Civil Action No. 1:10-cv-04079-TWT, 2011 WL 2580780 (N.D. Ga. June 29, 2011) (Thrash, J.); *Yates v. GMAC Mortg. LLC*, Civil Action No. 1:10-cv-2546-RWS, 2010 WL 5316550 at *4 (N.D. Ga. Dec. 17, 2010) (Story, J.) (dismissing RESPA claim with prejudice because plaintiff failed to "articulate any facts showing how Defendant's failure to respond or inadequate response to the RESPA requests resulted in any damages or the amount of such damages").

Accordingly, because Plaintiff has failed to allege sufficient facts to state a plausible claim for relief against Nationstar for any violation of RESPA, the undersigned **RECOMMENDS** that Nationstar's Motion to Dismiss [3] be **GRANTED** with respect to Plaintiff's RESPA claim against it in "Count 5" of the Complaint.

### 4.   *Plaintiff's State Law Claims*

In addition to his federal claims brought under the FDCPA and RESPA, Plaintiff has also asserted claims under Georgia law. He asserts "claims for damages

by the breach of duty and breach of negligence per se due to legal duties under the FHA Contract." Compl. at 15. Plaintiff asserts "claims for damages under Georgia Statutes for attempted Wrongful foreclosure by both Defendants." *Id.* He further asserts a claim for "libel damages and restoration of his name" because he has been "publically humiliated by the legal notices in the Cobb County newspaper." *Id.* He seeks to set aside any foreclosure sale, and "appropriate damages to unwind such sale." *Id.* Finally, Plaintiff seeks punitive and compensatory damages based on the alleged negligence of Defendants under O.C.G.A. §§ 44-14-160 through 162.4., and other damages "deemed appropriate by the court at trial." *Id.*

This case was removed to this Court on the basis of federal question jurisdiction under 28 U.S.C. § 1331; the Court has only supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. When a federal court dismisses all claims that give rise to federal jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction[.]"). The Supreme Court has explained that federal district courts should not entertain supplemental jurisdiction over state law claims as a matter of course:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them

34

> a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

"In determining whether to continue to exercise supplemental jurisdiction for state-law claims after all claims over which it has original jurisdiction have been dismissed, [the] district court should take into account concerns of comity, judicial economy, convenience, fairness, and the like" before remanding the state law claims. *May v. Boyd Bros. Transp., Inc.*, 241 Fed. Appx. 646, 647 (11th Cir. 2007) (*per curiam*) (citations and internal quotation marks omitted). In this action, the concerns of comity, judicial economy, convenience, and fairness to the parties are best served by remanding the state law claims.

"'State courts, not federal courts, should be the final arbiters of state law'" issues. *Ingram v. School Bd. of Miami-Dade County*, 167 Fed. Appx. 107, 108 (11th Cir. 2006) (quoting *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997)). The undersigned finds that this is particularly true in the area of foreclosure law, a matter governed by the Georgia code as interpreted by Georgia courts. *See Reese v. Provident Funding Associates, LLP*, 730 S.E.2d 551, 553-55 (Ga. Ct. App. 2012) (re-instating a claim for wrongful foreclosure on the ground that O.C.G.A. § 44-14-162.2 requires a foreclosure notice to identify the secured creditor

35

and the loan servicer violated this notice requirement); *see also Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 744 (11th Cir. 2006) ("A federal court will find substantial predominance when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage." (internal citation and quotes omitted)).

Accordingly, having recommended dismissal of all of Plaintiff's federal claims–which claims were the sole basis upon which Defendants removed this action–the undersigned recommends that the District Court decline to exercise supplemental jurisdiction to consider the Plaintiff's claim of wrongful attempted foreclosure and other state law claims. Defendants, upon remand, should be able to make the same arguments to the state court regarding dismissal of the claims that they made in this Court. Plaintiff may have another opportunity to respond to Defendants. And the state court should be able to efficiently and with the benefit of more expertise rule upon the Defendants' motion to dismiss the state law claims. "[N]either judicial economy nor fairness dictates a . . . result" other than remand. *Murray v. Marks*, No. 4:10-CV-126 (CDL), 2012 WL 359702, at *3 (M.D. Ga. February 2, 2012). And "there is nothing to suggest that the state court will be unable to render a fair decision under the applicable state law." *Id.*

In this situation, "where the case was originally filed in state court and subsequently removed to federal court, precedent dictates that the district court . . . *remand*[] the remaining claims to state court[,]" rather than dismiss the claims without prejudice. *May*, 241 Fed. Appx. at 647 (emphasis added) (*citing, e.g.*, *Cook ex rel Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1123 (11th Cir. 2005); *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001)); *accord Murray*, 2012 WL 359702, at *3 (declining to exercise supplemental jurisdiction stating, "Although dispositive motions are currently pending before the Court, district courts are encouraged 'to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.'") (quoting *Murphy v. City of Aventura*, 383 Fed Appx. 915, 919 (11th Cir. 2010) (internal quotation marks omitted)).

Accordingly, the undersigned **RECOMMENDS** that Defendants' Motions to Dismiss [3][9] be **DENIED** with respect to Plaintiff's state law claims and that those claims be **REMANDED** to the Superior Court of Cobb County.

## III.  RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the Defendants' Motions to Dismiss [3][9] be **GRANTED IN PART, DENIED IN PART**.

**IT IS RECOMMENDED** that the Motions to Dismiss [3][9] be **GRANTED** as to Plaintiff's claims under the FDCPA and RESPA, and that those claims be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that the Motions to Dismiss [3][9] be **DENIED** as to the Plaintiff's state law claims, and that those claims be **REMANDED** to the Superior Court of Cobb County.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 18th day of December, 2013.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE